UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

**HENRY W. GOLDEN, III**                                        **CIVIL ACTION**

**VERSUS**                                                                       **NO.:**

**KEITH COOLEY, WARDEN**                                  **SECTION:**
**ALLEN CORRECTIONAL CENTER**
**KINDER, LOUISIANA**

**APPLICATION FOR WRIT OF HABEAS CORPUS**
**UNDER 28 U.S.C. s. 2254**

**May It Please The Court:**

Petitioner, Henry W. Golden, III, is a Louisiana State prisoner serving a sentence of twenty years (20) on a single count of violating La.R.S. 40:967(C)(2), to wit: Possession of Cocaine, the original sentence having been enhanced by Louisiana's multiple offender statute pursuant to La.R.S. 15:529.1. That sentence of the Orleans Parish Criminal District Court Division "L" is being served under docket number 471-194. The sentence is served at hard labor with credit for time served. Mr. Golden is housed at Allen Correctional Center in Kinder, Louisiana.

**STATEMENT OF THE CASE**[1]

The State charged Henry W. Golden, III via bill of information with one count of simple possession of cocaine. (R. p. 1). Mr. Golden entered a plea of not guilty. (R. p. 4, 19). On December 20, 2007, both the State and the trial court voluntarily recused themselves from the case. (R. p. 27, 328). Despite the recusal, the State continued to prosecute the case. Later, the defense filed a motion to recuse the Office of the District Attorney. (R. p. 49, 231). The trial court granted the motion to recuse and stayed the proceedings pending the State's writ

---

[1] References to the record refer to the record on appeal as submitted to the Louisiana Fourth Circuit Court of Appeals unless otherwise noted.

application. (R. p. 53-55, 238-240). The case resumed on December 17, 2009 with motion hearings. (R. p. 59). The defense filed a motion to exclude expert witness testimony which the trial court denied. (R. p. 70, 174, 228). The trial court denied the motion to suppress the evidence. (R. p. 121). Trial commenced on November 16, 2010. (R. p. 84). The jury found Mr. Golden guilty as charged on November 18, 2010. (R. p. 86, 111). On December 1, 2010, the trial court sentenced Mr. Golden to five (5) years in the Department of Corrections at hard labor. (R. p. 88, 104). The State filed a multiple offender bill of information charging Mr. Golden as a fourth felony offender. (R. p. 3). On June 20, 2012, the trial court adjudicated Mr. Golden a fourth felony offender and sentenced him to the twenty (20) years he is currently serving. Due to State attributable delays in the multiple offender proceeding, Mr. Golden's direct appeal was bifurcated. The appeal of his conviction was completed prior to his sentencing. A subsequent appeal on the issue of sentencing only followed.

Petitioner was granted a direct appeal in a timely fashion. (R. p. 92-96). As to the guilt phase, the appellant filed his brief with the Louisiana Fourth Circuit Court of Appeals on or about September 16, 2011 under docket number 2011-KA-0735. That Court affirmed Mr. Golden's conviction on May 23, 2012. *State v. Golden,* 95 So.3d 522 (2012). Mr. Golden filed timely his writ application with the Louisiana Supreme Court. The writ application was denied without reasons on or about January 17, 2013. In the direct appeal of his conviction, Mr. Golden raised the following issues: (1) The denial of the defense motion to suppress evidence violated the Fourth Amendment; (2) The state introduced impermissible other crimes evidence and violated Mr. Golden's rights to Due Process of Law; (3) The Court admitted expert testimony in violation of *Daubert;* (4) The District Attorney's continuing to prosecute the matter after

recusing itself created a structural defect which rendered the entire proceeding fundamentally unfair and violated Mr. Golden's right to Due Process of Law.

The second part of Mr. Golden's direct appeal concerned his sentence only. Two issues were raised before the State court. First, whether structural errors in the State's case violated Mr. Golden's right to Due Process of Law at sentencing. Second, whether the State met the reasonable doubt standard under *In re Winship* for proving Mr. Golden a fourth felony offender. Mr. Golden filed timely this second portion of his appeal with the Louisiana Fourth Circuit Court of Appeals. That Court affirmed his sentence on October 13, 2013. *State v. Golden*, 126 So.2d 829 (La.App.4Cir. 10/30/2013). The Louisiana Supreme Court denied without reasons this portion of Mr. Golden's direct appeal on or about May 19, 2014. As there were no new issues to bring before the state courts, Mr. Golden did not file any state post-conviction proceedings on any matters.

## STATEMENT OF THE FACTS[2]

On April 23, 2007, New Orleans Police Department (NOPD) Detective Frankie Watts was assigned to a narcotics unit within the Special Operations Division (SOD) and was working with NOPD Detectives Chad Perez and Nathan Gex. (T.Tr. p. 9-10). Watts maintained surveillance in the 800 block of North Salcedo Street. (T.Tr. p. 11). About twenty (20) minutes into the surveillance, Watts observed the "target vehicle" about twenty (20) yards from his surveillance position. (T.Tr. p. 11-12). Watts observed Mr. Golden inside the "target vehicle" speaking on a cell phone. Watts observed Mr. Golden exit the vehicle and drop a tin can. He then observed Mr. Golden retrieve the object. (T.Tr. p. 13-14, 19). Watts considered the dropping and retrieval of an object as suspicious behavior and notified the other officers. (T.Tr. p. 15).

---

[2] The Statement of the Facts is taken entirely from the trial transcript located in the appellate record of the Louisiana Fourth Circuit Court of Appeal in volume two (2) of the record. It is reflected in this petition as T.Tr. with the designated page/line number.

Detectives Gex and Perez arrived and "covered" Mr. Golden preventing any possibility that Mr. Golden would be free to leave. (T.Tr. p. 16, 22). Detective Watts testified that the stop was "inevitable". (T.Tr. p. 23). Detective Perez testified that he first observed Mr. Golden from about thirty (30) feet attempt to conceal and then discard an Altoid tin. (T.Tr. p. 26-29). Detective Gex testified that he observed Mr. Golden "discard" an object. Gex then retrieved the object while Perez detained Mr. Golden. (T.Tr. p. 36-39). Gex testified that inside the object was "cocaine" and it was in "distribution packaging". (T.Tr. p. 40). On cross-examination, Gex indicated that he had been issued a summons for disturbing the peace and that he entered a plea of no contest. (T.Tr. p. 44). The trial court admitted Mr. John Frederick Palm, Jr. of the New Orleans Police Department as an expert witness. Mr. Palm testified that he analyzed the substance and determined it to be cocaine. (T.Tr. p. 47-50).

## EXHAUSTION

Pursuant to 28 U.S.C. s. 2254(b)(1)(a), a petitioner must exhaust his remedies in state court before seeking habeas corpus relief from the federal courts. "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001). Here, Petitioner has set forth all claims in his bifurcated direct appeal and pursued all claims to the Louisiana Supreme Court which denied the claims without reason. Petitioner has met the exhaustion requirement.

## TIMELINESS

Under the AEDPA a petitioner has one year from the date of finality of his conviction and sentence for filing a habeas petition. *28 U.S.C. s. 2244.* Here, Petitioner's bifurcated direct appeal concluded May 16, 2014. Therefore, Mr. Golden's application for habeas relief is timely filed.

**MERITS OF THE CLAIM**

**Issue: Whether the District Attorney's voluntary recusal of itself on December 20, 2007 followed by its continuing to prosecute the matter despite the recusal constituted a structural defect in the proceeding which violated the Petitioner's right to Due Process of law and required Petitioner's conviction be set aside?**

On December 20, 2007, the Office of the District Attorney for Orleans Parish (OPDA) voluntarily recused itself from the case at bar. (R. p. 27, 328). The record is silent as to why OPDA voluntarily recused itself and there is no indication of any objection by any party relating to this recusal. This voluntary recusal occurred prior to Mr. Leon Cannizzaro assuming the mantle of Orleans Parish District Attorney.[3] Petitioner contends that due to the recusal, the prosecution lost jurisdiction to proceed with the case. Mr. Golden argues that this lack of prosecutorial jurisdiction infected the entire pre-trial, trial, and sentencing processes from beginning to end, in a way that rendered the entire matter fundamentally unfair and created a structural defect of never before seen magnitude that cannot be harmless error. This issue raises questions of first impression in every single United States jurisdiction, state or federal. Petitioner notes that the standard of review for jurisdictional errors is *de novo*. *United States v. Sigillito,* 759 F.3d 913 (8th Cir 2014).

At its most basic, a structural defect is one in which the consequences of the defect are both unquantifiable and indeterminate. *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). One of the basic concepts of a criminal trial is that guilt must be determined beyond a reasonable doubt and that it is the burden of the prosecution to produce evidence to meet that burden. *Sullivan, supra; In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368

---

[3] Petitioner contends that the change in elected officials is not relevant to his argument. Once the OPDA recused itself, under Louisiana law the case would have been handled by the Attorney General until its completion. Petitioner only notes the change in elected officials by way of explanation for the defense's filed motion of recusal later in the case.

(1970). Bias by one of the key parties to the proceeding has long been held to violate Due Process of law. Prosecutions presided over by persons without jurisdiction or whom should have been recused have long been considered to be structural defects. *Tumey v. State of Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *See, also, Gomez, infra.* While these cases concern the roles of the judiciary, the principles apply equally to the prosecution as the prosecution is the representative of the sovereign whose duty it is to govern impartially. *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 679, 79 L.Ed. 1314 (1935).

As to the nature of the error created by the continued prosecution of the matter following the 2007 voluntary recusal of OPDA, while there is no case anywhere close to factually similar, this Honorable Court may look to *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed2d 923 (1988). The *Gomez* Court addressed jurisdictional issues of federal magistrates. In the course of addressing these jurisdictional issues, the *Gomez* Court provided some basic guidelines for jurisdictional issues in criminal cases. First, where a jurisdictional issue occurs the harmless error standard does not apply. Second, the *Gomez* Court stated that every criminal defendant has a fundamental right to have all critical stages of a prosecution conducted by persons who have jurisdiction over such matters. Here, it is Petitioner's contention that the 2007 voluntary recusal of OPDA rendered that office without jurisdiction to proceed in any additional matters relating to this case. Second, Petitioner contends that OPDA's continued prosecution of the matter following the voluntary recusal was a structural jurisdictional defect which violated Petitioner's fundamental right to Due Process of Law and therefore can never be harmless error. *See, also Stigillito, supra.*

The Texas Appellate Court sitting in *In re Ligon,* 408 SW3rd 888 (Tex. App. 2013) also provides interesting, although not on point, insight into the issue before this Honorable Court.

Although there is some difference on the laws of recusal between the State of Texas and the State of Louisiana, as the *Ligon* Court noted, the Constitutional standards of Due Process of Law are identical nationwide. *See, also, Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The State may not deprive an individual of his liberty without Due Process of Law. *U.S. Const. amend XIV.* The *Ligon* Court addressed the disqualification of a District Attorney from a prosecution based on a conflict of interest. In so doing, the *Ligon* Court noted that when a prosecutor's participation in a criminal matter generates a structural conflict such that there exists the potential for intolerable misconduct, a Due Process violation occurs. The *Ligon* Court also noted that a voluntary recusal allows the District Attorney to avoid both actual conflicts of interest as well as any appearance of impropriety. The *Ligon* Court noted that vast prosecutorial powers are constrained by the requirements of Due Process. These constraints ensure that matters carried out in the name of the State will encourage both public confidence and the prosecutor's duty to seek impartial justice. Like *Gomez*, the *Ligon* Court agreed that a structural defect is not subject to harmless error analysis nor does it require a showing of prejudice. Here, the Louisiana Fourth Circuit Court of Appeals ignored the egregious nature of the structural defect and considered the matter "problematic" but "moot" as the matter continued to proceed forward following the voluntary recusal. Petitioner notes that on collateral review, a structural defect requires the Court to set aside the conviction without regard to whether or not the Petitioner suffered any prejudice as a result of the defect. *Hedgpeth v. Polido,* 55 U.S.57, 129 S.Ct. 530, 172 L.Ed.2d 388 (2008).

**Issue: Whether the denial of a party's request for a *Daubert* hearing constitutes a failure to perform the trial court's required gatekeeping function and violates Due Process of Law?**

Here, Mr. Golden challenges the trial court's admission of a "positive" cocaine test under circumstances which question the tests results liability and contend that the gross failure on the

part of the trial court to properly conduct the proceedings violated Petitioner's right to Due Process of Law. The United States Supreme Court, sitting in *Daubert v. Merrel Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993),* established the current standards for the introduction of scientific evidence at trial. The Louisiana Supreme Court, sitting in *State v. Foret,* 628 So.2d 1116 (La. 1993), adopted the standards set forth in *Daubert.* Those standards make the trial court judge a gatekeeper in determining the reliability of scientific evidence. *Daubert, supra; Foret, supra.* The primary means of exercising this gatekeeping function is by holding what is commonly referred to as a *Daubert* hearing. This gatekeeping role is prudent and necessary to the evaluation of expert testimony in criminal cases. Denial of a party's request for a *Daubert* hearing constitutes a failure to perform this required gatekeeping function, violates Due Process of Law, and is an abuse of discretion on the part of the trial court. *See, Daubert, supra.*

The standard announced in *Daubert* required that the party seeking to introduce the expert's testimony as to scientific knowledge established a standard of evidentiary reliability that was unrelated to the expertise of the witness himself. *Daubert,* 509 U.S. 579 (1993). *Daubert* established four general areas for the trial court to consider when reviewing the reliability of scientific evidence; these are: (1) The testability of the theory or technique used, (2) Peer review, (3) The known error rate, and (4) Whether or not the methodology used is generally accepted in the scientific community. *Daubert,* 509 U.S. 579 (1993). In further explaining these four categories of consideration, the *Daubert* Court noted that rates of error are inherently tied to the existence and maintenance of standards and controls. The *Daubert* Court noted also that techniques which have minimal support in the scientific community may properly be viewed with skepticism. *Daubert,* 509 U.S. 579 (1993). The purpose of a *Daubert* hearing is to

determine the reliability of the expert's methods not whether the expert has the proper qualifications to testify. It is consideration of the reliability of the expert's methodology which *Daubert* requires. Here, the defense stated in their motion, "Particularly, the New Orleans Crime Lab lacks quality assurance data, written standards, uniform procedures, tests of known negatives versus known positives, and other deficiencies which provide reliability to the scientific method used by the laboratory." In addition, the defense presented preliminary documentary evidence in support of their claim. This presentation was sufficient to trigger the trial court's gatekeeping function. However, the trial court missed the point of the request, determining instead that the witness possessed the proper qualifications to testify. In its ruling, the trial court failed to address the issue at hand: the reliability of the methodology used by the witness in testing the questioned substances. Here, the defense asserts that the procedures used to test the substances in this case were not reliable nor accepted within the general scientific community. This is not an attack on the GC-MS technology and thus does not fall within *United States v. John,* 597 F.3d 263 (5th Cir. 2010). Evidence produced at trial bears out the faulty technique applied by the analyst in the case at bar. Specifically, it was testified to at trial that Mr. Palm combined four samples into one sample for testing and it was questioned as to whether or not he ran blanks prior to the testing. There was no documentation of the running of a blank prior to testing. (T.Tr. p. 65-70, 90-94, 114-115). As a result of the sloppy and unsanctioned technique used by Mr. Palm there is no guarantee that the results are accurate. Obviously an erroneously positive test for cocaine would be highly prejudicial and would produce an unjust result. Such an error cannot be harmless under the *Chapman* standard.

    **Issue: Whether the initial imminent stop and detention of Mr. Golden violated the Fourth Amendment and should have resulted in the suppression of the Altoid Tin and its contents.**

Here, Mr. Golden contends that the seizure of the Altoid tin violated his right to be free from unreasonable search and seizure under the Fourth Amendment. Detective Frankie Watts conducted a surveillance of the 800 block of North Salcedo Street. (R. p. 133-135). While on surveillance, Watts observed Mr. Golden drop an object on the ground and immediately retrieve it. (R. p. 136-137). While Watts maintained surveillance, Detective Perez pulled his marked unit directly behind Mr. Golden's vehicle. Perez claimed that Golden discarded an object to the ground. (R. p. 141-142). Watts testified that he observed Detective Gex and Perez "cover" Mr. Golden preventing Mr. Golden from being free to leave. (T.Tr. p. 16-22). "Covered" according to Watts is "in a two man set is more, one is balanced off to the left and one's balanced off to the right, as they approach, to where an escape route, the percentages are very low." (T.Tr.p. 22-23). Watts stated the stop was "inevitable." (T.Tr.p. 23). Detective Gex recovered an Altoid tin which was alleged to contain cocaine. (T.Tr. p. 142-143). Gex provided more detailed information at a preliminary hearing on May 15, 2007, less than one month from the incident.[4] Gex testified as follows:

> Q: Now, when you detained Mr. Golden, did you place him in handcuffs?
> 
> A: He was placed in handcuffs, yes sir.
> 
> Q: Was that done before or after the Altoid tin was picked up from the      ground?
> 
> A: It was in close proximity. I don't know the exact time he was placed in  handcuffs.  He as detained as the object was being recovered. (PETrans p. 11,       l. 6-13).

Detective Perez testified at the same hearing that multiple marked police units were on the scene when the officers "covered" Mr. Golden, preventing him from leaving. (PETrans. p. 22-23). Petitioner notes that he did not voluntarily approach police but submitted immediately to police authority.

---

[4] The preliminary hearing transcript was not included with the original record and was filed, with permission of the Louisiana Fourth Circuit Court of Appeals by Petitioner in conjunction with a motion to supplement the record. It is referred to hear as PETrans.

10

The Louisiana Fourth Circuit Court of Appeals assessment of the facts can be summarized as follows: Detective Perez received a CI tip from a reliable informant. Detective Watts observed Mr. Golden "pacing" by his vehicle before dropping and recovering an unknown object. Upon making the stop, Perez and Gex observed Mr. Golden drop an Altoid tin. Petitioner notes that the Court's opinion only references the motion hearing and trial but does not reference the preliminary hearing. Based on this assessment of the facts, the Louisiana Courts found the stop Constitutional. Here, Petitioner challenges both the factual findings and the legal analysis of the Louisiana Courts. Petitioner notes that factual findings are reviewed for clear error while legal findings are reviewed *de novo. United States v Hearn,* 563 F.3d 95 (5Cir. 2009).

The Fourth Amendment protects the rights of the people to "be secure in their persons, houses, papers and effects against unreasonable searches and seizures." *See, Gambino v. United States,* 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed 293 (1927); *Bailey v. United States,* 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013); *United States v. Grant,* 349 F.3d 192 (5Cir. 2003). Here, the incident begins as an alleged investigative detention. Therefore, the court inquires as to whether the officer's actions were justified at there inception. *Grant,* 349 F.3d 192 (5Cir. 2003). Factually, officers received a confidential informant (CI) tip regarding narcotics sales, conducted surveillance, and observed Mr. Golden exit his vehicle and drop an object on the ground. Mr. Golden immediately retrieved the object. There were no other persons in the area. The officers' reaction to the innocent action of dropping and retrieving an object was for two (2) marked units bearing four (4) police officers to "cover" Mr. Golden, physically preventing him from being free to leave and forcing his immediate submission to police authority. This is not detention but arrest and, Mr. Golden contends, not reasonable but extreme police action under the circumstances. The police failed to articulate any threat to themselves or the public at large. The

facts fail to suggest that the stop of Mr. Golden posed a safety concern. *See, United States v. Abdo,* 733 F.3d 562 (5th Cir. 2013); *United States v. Sanders,* 994 F.2d 200 (C.A.5 (Tex), 1993).

Investigative stops are permitted when an officer has a particularized and objective basis for suspecting a particular person of criminal activity. A tip may be considered in addressing the officer's objective basis. However, a tip alone may not be sufficient justification for a *Terry* stop. *Navarette v. California,* 572 U.S. ____, 134 S.Ct. 1683 (2014). Here, the tip came from a known CI. The CI provided that a Black Toyota FJ Cruiser would leave a pet supply store just after 5:00 P.M and travel to the 800 block of North Salcedo Street to engage in a drug transaction. In fact, Mr. Golden was driving a car matching the description and stopped in the 800 block of North Salcedo Street at 5:20 P.M. However, there was no one in the vicinity and no drug transaction was observed. Additionally, it is unknown where Mr. Golden drove from as no officers monitored the pet supply store.

The United States Supreme Court, sitting in *Alabama v. White,* 496 U.S. 315, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), addressed the role an anonymous tip played in an investigatory stop. The *White* Court addressed the need for officers to perform additional investigation to corroborate a tip. Petitioner acknowledges that the surveillance, here, was the NOPD's attempt to corroborate the tip but contends that the attempted corroboration was insufficient to justify the initial detention. Petitioner notes that in *White,* police followed the suspect from the point of origination to just short of the destination given in the tip. The *White* Court affirmed the conviction. In contrast, the United States Supreme Court, sitting in *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), reversed a conviction which followed from a tip and an investigatory stop. The *J.L.* Court noted that the *White* case was a close call and stated, "Knowledge about a person's future movements indicates some familiarity with that person's

affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband." The *J.L.* Court further noted that simply because a tip turns out to be accurate does not mean the initial detention was Constitutional. Here, the tip was deficient both in the timing of Mr. Golden's arrival and in the suggestion that a narcotics transaction would occur as no other persons were reported present at the time of the stop. Mr. Golden notes that the 800 block of North Salcedo is a residential neighborhood so his exiting his car would not be unusual. Likewise, dropping and retrieving an object is not inherently suspicious or collaborative activity. Here, officers acted prematurely and without sufficient corroboration of the CI tip. As such, the evidence should have been suppressed. As the evidence retrieved following the stop was the only evidence presented against Mr. Golden, the error cannot be considered harmless.

**Issue: Whether the trial court erred in finding the defendant a fourth felony offender where the limited evidence presented fails to prove beyond a reasonable doubt the identity of the defendant and where the transcript of the April 20, 2011 hearing indicated that the Orleans Parish conviction did not contain proper evidence of a plea colloquy between the trial court and the defendant in violation of the reasonable doubt requirement established under Louisiana Law and by *In re Winship*.**

On April 20, 2011, the State offered latent prints examiner, Officer Joseph Pollard as its expert witness for Mr. Golden's Multiple Offender adjudication. Following the State's proffer of evidence, the trial court adjudicated Mr. Golden a fourth felony offender. He was later sentenced to twenty (20) years at hard labor. For the reasons stated herein, Mr. Golden contends that the State failed to prove that he was a fourth felony offender in violation of *In re Winship* and its progeny.

Louisiana Revised Statute 15:529.1(D)(1) provides that "the district attorney shall have the burden of proof beyond a reasonable doubt" in a multiple offender adjudication. This burden requires the State to prove both the existence of the prior conviction and that the defendant

seated before the bar is one and the same as the person who committed the prior offense. *See, State v. Golden,* 126 So.2d 829 (La.App. 4 Cir. 2013). Petitioner notes that the reasonable doubt standard is a derivative of the Due Process clause and therefore an issue of Constitutional magnitude on Federal Habeas review. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The controversy surrounds State's exhibit five (5).

Officer Pollard identified State's exhibit four (4) as a certified copy of an arrest register and State's exhibit five (5) as a copy of a certified conviction under Orleans Parish case number 374-115. (Tr. p. 7) . According to the testimony, State 5 contained a minute entry relating to a guilty plea. (Tr. p. 8). Officer Pollard compared the fingerprints on State 4 and the fingerprints on State 1, an ink rolled fingerprint card, and concluded that they were one and the same and they belonged to Mr. Golden. (Tr. p. 8). There was no fingerprint analysis conducted on State 5 and no explanation given as to why no such analysis was completed. On cross-examination, the record reflects that the minute entry for State 5 failed to reflect what rights, if any, the court advised the defendant of before and during the entry of his guilty plea. (Tr. p. 9-10). Moreover, there was no plea of guilty form in State 5. (Tr. p. 10).

The elements for proving beyond a reasonable doubt that someone is a multiple offender are well established in Louisiana jurisprudence. First, the State must prove the existence of the felony conviction and that the defendant seated at the bar is one and the same individual as the defendant previously convicted. *State v. Suggs*, 70 So.3d 60 (La.App. 5th Cir. 2011); *State v. Smith*, 897 So.2d 710 (La.App. 1Cir. 2004). Simply matching the name of the defendant seated at the bar with the name of the defendant listed in the prior conviction is insufficient to establish identity. *State v. Besse*, 83 So.3d 257 (La.App. 5th Cir. 2011). Where the prior conviction is the result of a guilty plea, as here, the State must prove the defendant was represented by counsel.

The burden then shifts to the defense to provide affirmative evidence that there was some infringement of the defendant's rights during the prior plea. When the defense meets this affirmative burden, the State must rebut the evidence with proof of a proper plea colloquy. *Suggs*, 70 3d. 60 (La. App. 5th Cir. 2011). Proof of a proper colloquy includes evidence that the court advised the defendant of his three critical *Boykin* rights and that the defendant waived each of those rights. *State v. Morgan*, 948 So.2d 199 (La.App. 5th cir. 2006); *State v. Abbott*, 634 So.2d 911 (La.App. 4Cir. 1994). A minute entry that shows that the court advised defendant of his rights under *Boykin* without expressly listing those rights does not satisfy the legal requirement under the multiple offender statute and jurisprudence. *State v. O'Neal*, 795 So.2d 1292 (La.App. 2Cir. 2001); *Abbott*, 634 So.2d 911 (4th Cir. 1994); *Barksdale v. Blackburn,* 670 F.2d 22 (C.A.5 (La) 1982); *Willet v. State of Georgia,* 608 F.2d 538 (C.A.5 (Ga) 1979).

      Here, as to the Orleans Parish conviction, the State failed to adequately prove identity; opting only to prove that numbers and names on an arrest register which linked via fingerprint evidence to the Defendant were the same numbers and name which appeared on a conviction form. However, there were no fingerprints and no independent witness testimony linking the actual conviction to Henry Golden. Linking an arrest record to a defendant is insufficient evidence of identity and of the conviction of that defendant and therefore, Mr. Golden cannot be a fourth felony offender. *State v. Brown*, 82 So.2d 1232 (La. 2012); *State v. Hayes*, 108 So.3d 360 (La.App.4th Cir. 2013). Second, while the State was able to prove representation by counsel, the defendant introduced affirmative proof of a defect in the plea colloquy on cross-examination. The cross-examination on State 5 went as follows:

      Q: With regard to State's exhibit Five, would you please look at the minute entry from March 14, 1996.

      A: (Witness complies with counsel's request.)

Q:  Does that minute entry indicate that Judge Reed personally advised Mr. Golden of his rights?

A:  It doesn't state.

Q:  Does it state what the rights Mr. Golden was advised?

A:  No, it doesn't

Q:  And there is no corresponding plea of guilty form in State's Exhibit Five; isn't that correct?

A:  That is correct. (Tr. p. 9-10).

The Louisiana Courts found sufficient evidence to uphold the multiple offender adjudication.  Because this is an issue of sufficiency of the evidence, this Honorable Court reviews the matter in a light most favorable to the prosecution under the *Jackson* standard. *Banks v. McGougan,* 717 F.2d 186 (C.A.5 (La) 1983).

## CONCLUSION AND PRAYER

Wherefore, for the reasons state above, Mr. Golden prays this Honorable Court grant him relief in this matter.

**Respectfully submitted:**

**J.C. LAWRENCE, JR. & ASSOCIATES, L.L.C**


     s/James C. Lawrence, Jr

JAMES C. LAWRENCE, JR. #(8142)
jcl@jclawrence.com
303 South Broad Street
New Orleans, Louisiana 70119
Telephone: (504) 822-1359
Facsimile: (504)822-3861

## **CERTIFICATE OF SERVICE**

      I hereby certify that on 15 day of May 2015, electronically filed that foregoing with the Clerk of Court by using CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                                         s/James C. Lawrence, Jr.

                                                          James C. Lawrence, Jr.